Good morning, Your Honors. Kent Russell for the petitioner, Mr. Alvarado. I first would like to explain that I was not the lawyer for the petitioner in this matter until the judge issued her report and the magistrate issued the report and recommendation. So I pretty much come in with a table that's already been set. I think that is relevant to some degree because you've got a prisoner here who is in prison from the time that actually AEDPA is enacted until all these various events start happening with him. And it makes the record very, very complicated as to exactly what was going on. I mean, I know I could have done a better job of presenting these facts more clearly if I'd been the lawyer, but I wasn't, and there's nothing I can do about that. Kennedy Well, sometimes there's an advantage to that. Sometimes there's a disadvantage. That's where I'm going. It seems to me that especially in light of the record as it exists, that this is a very, very bad case for this Court to decide a factual issue that's very tangled in the record. I think there's something like 500 pages in this supplemental record that my opponent was kind enough to file with the Court that relates to this factual issue, the issue being, you know, is there equitable and statutory tolling of the AEDPA statute of limitations? I mean, you've got all these declarations back and forth. You've got issues as to whether the AEDPA was even in the prison he was in or it wasn't, whether if AEDPA was there or there was anything else, whether he had pencils, paper. And you've got the district judge saying, first of all, she didn't ---- Kennedy Does he say that it wasn't there where he was, or is that record just going on? And, you know, what she does is what a typical, I think, busy judge might do. I don't criticize her for this. But basically what she does is she doesn't tell us anything except that she does deny a motion to dismiss that's made on precisely these grounds. We know that. We know that the motion was denied. And we know she's disturbed by the Whalum v. Hunt issues, and we know she's disturbed by the lack of legal materials in the prisons, enough to say that not only might this qualify as equitable tolling, but it might even be an impediment to a filing under the Lewis v. Casey line of cases. We know that much. Kennedy Just a little preliminary. You sought a certificate of appealability with respect to this issue? I sought a certificate of appeal. No. I sought a COA on the issues on the merits, because the judge ---- Kennedy Please don't get ahead of me. Just one step at a time. Did you seek a COA with respect to the application or tolling of AEDPA? No, sir, I did not. Petitioner see ---- I'm reading from the district court order denying in part ---- granting in part request for certificate of availability of appealability filed February 16, 2006. Yes, sir. And page 3, Petitioner seeks a certificate of appealability with respect to two claims. One, whether the district court's application of the AEDPA standard to the California Court of Appeals' judification of Petitioner's claim was debatable or wrong. And then he goes on to ---- Judge Klausner goes on to say no COA. Right. Right. This is a different issue. There was an issue as to instructions, and that issue was we asked for a COA on the instructions and she denied it. And we did not press that claim and are not pressing that claim. My understanding of your question was you asked whether she ---- we had asked for a COA on the statute of limitations issue, and we did not. And she did not ask on that. On the application of AEDPA. Oh, well, only in terms of AEDPA applying to an IAC claim and being the standard. You can't ---- you have to go through AEDPA if you're going to challenge the State Court findings. So, of course, we did have an AEDPA issue there. But, no, we did not ask for a COA on the statute of limitations because we thought that issue was gone. We thought when a party presents 500 pages worth of facts to the parties, to the district judge, and the district judge denies the motion to dismiss, and then in the report and recommendation says I'm not going to reach this issue because there's too much factual complexity to it. It didn't even occur to us to ask for a COA on the issue because we thought actually that we had prevailed on that issue. I don't mean to be critical in any way by asking that question. I'm simply trying to focus myself on the ---- Sure. And the issue that we're here concerned with is whether there was ineffective assistance of counsel under the AEDPA standard. Yes, sir. That issue is fully briefed. And that's the issue that I want you to decide this case on rather than this other issue that was raised for the first time in the appellee's brief. As far as that issue is concerned, moving to that, I think that the main claim ---- there's a lot of claims here that are not, in my view, terribly solid. Again, I was stuck with these. But the one that I want to press here, which I think is the most solid claim, is this business about the fellow having this head injury. You have evidence that he's ---- this is unusual about the case. I mean, the case starts when this poor fellow is beaten and kicked by these assailants in this parking lot. And then there's a gun that goes off. We're not really sure what happened in that parking lot, are we? Well, we know he was beaten and kicked by two people, both of them armed. We know that from the witnesses. As to, you know, where they kicked him exactly or ---- no, we don't know that. But we do know they were wearing cowboy boots. Could have been a drug deal gone bad. Could have been. And, of course, we have drugs around there, and so, you know, it smells like that. But we don't know anything except that he was, for sure, that he was assaulted, but with fists and feet, that these guys were armed. One shot, one gun is discharged, and there's a bullet wound to the head. And there are some ---- Was it a gull through, or was it a glancing blow? It must have been a glancing blow. It must have been, but there's two places in which they say that there's bleeding from the ear. And that's at SER 34. And also there's another reference to it at 254, SER 254. I saw blood on his left ear, caked blood on his left ear. Now, I mean, then we know that he's dizzy and disoriented. We know from his own testimony that he says he can't remember actually getting the gun out of the truck. We know that there's a pregnant defense here of what we call imperfect self-defense, which is the honest but unreasonable belief in the need to defend. We've got a guy who's just been shot in the head. He's reacting to this thing. And it seems to me that there's a very strong claim that can be made here based upon him believing honestly that he had to get these guys before they got him, even though that may be unreasonable given the ballistics evidence and the rest of it. You've got about a minute and a half left. Why don't you tell us what it is that the trial lawyer did or didn't do that constitutes IAC and how that impacted the merits? He didn't call an expert to testify as to the facts here that I've just ran down, how those would have affected a claim for imperfect self-defense. Have you shown in the record that what the expert would testify if called under the circumstances? No, sir. And that's the chance. I did not have the chance to do that because of when I got the case. He did not do it. He was in prison. It seems to me that there is a prison doctor who could at least say he's got brain damage. Well, yeah. And it seems to me that that issue is well-known enough that one can suppose that this is exactly what a doctor would do. Now, I think what we do have in the case, even though we don't have that declaration that I'd sure like to have and would have probably if I'd handled this case, is we don't have even counsel consulting with an expert. That's another level of this. What do you need an expert when the evidence is clear that the victim was running away from the defendant and the victim was shot in the back of his head? Now, how can you say that you've got an imperfect defense of an unbalanced mind? Because I think that what jurors are looking for is maybe evidence of brain damage or something like this. That's not there. But what you do have is you have an adrenaline rush that occurs when someone's shot in the head. You have symptoms of head injuries, which we know are consistent with bizarre activity. And then we have this car rushing at the guy at 30 miles an hour directly at him. We have that kind of adrenaline rush that I think in the hands of an expert, with the symptoms of the head injury and all that, give him a shot at imperfect self-defense. That's the best answer I can give. You're over your time. We'll give you a little time for rebuttal. Thank you, sir. We'll hear from the Warden at this time, Ms. Miyoshi. Good morning, Your Honors. Deputy Attorney General Stephanie Miyoshi on behalf of Respondent. All of Petitioner's ineffective assistance of counsel claims suffer from a fatal deficiency in that they're vague and conclusory and are not supported really by any type of facts. And so he doesn't really show he's focusing, for example, on the failure to raise a mental defense. He hasn't shown that his counsel acted deficiently or that he was prejudiced by his counsel's alleged shortcomings, and therefore the district court properly denied the claim on the merits without holding an evidentiary hearing. In regards to the mental defense, Petitioner did not show that there was an expert available, that such an expert would have provided helpful testimony on his behalf, or that even such a defense was viable. Petitioner himself testified that after the altercation he was dizzy and had a headache. The two officers who saw him after the altercation described the wound as being minor. One said that he had a small amount of blood on the left side of his head. The other officer described the wound as, quote, a minor laceration, and the jury itself saw a picture of the wound. So there doesn't appear to be anything in the record that really would support a mental defense. He also contends in the brief and in his petition that counselors should have called a doctor who sutured his head in an effort to show that he had some kind of viable mental defense. But there's nothing to show that that particular doctor could have testified to anything other than the physical nature of the wound itself. There's nothing to show that he was qualified to testify about mental defenses or about the supposed link between traumatic head injuries and possible psychological effects. Counsel here raised the defense that he thought was the most viable, which is a self-defense type of defense, since there was an altercation that preceded the actual murder. And there's nothing in the record to show for this claim or any of his other claims that counsel acted deficiently or that he was prejudiced by counsel's actions. Did he ever show anything in the record that as a result of this wound in prison, he had to be treated for some kind of mental problems or brain damage or anything of this nature? No. The record that he provided really didn't support his claim at all, other than making the bald assertion that counsel should have called an expert and had him examined by an expert. But he did not support his claim with any type of facts, declarations, et cetera. Did he even allege that he's suffering presently from organic brain damage or anything of that nature? No, I don't believe so. He merely contended that at that particular time, he might have been suffering from some kind of mental incapacity. Anything else? Unless there are no further questions. I don't see any. Thank you for coming in today. Thank you. Rebuttal? I'll give you about 30 seconds. Just one point that I'd stress, which is that a defense based upon imperfect self-defense does not require a showing of mental disability or mental defect. It requires a showing that one's faculties are sufficiently impaired, that there's an honest but unreasonable belief. And it seems to me that medical evidence could have gone, again, back to this adrenaline rush with the car coming at him without having to show brain damage. Okay. Thank you. Are you speculating that this was imperfect defense, or do you have a witness who would or have you called a witness and talked to a witness who would testify that this was an imperfect defense case? Either yes or no. Well, okay. No, I don't have a witness other than the defendant. The defendant testified to this. Counsel argued it. He didn't have any corroboration for it. But you're saying the other counsel should have called a witness. I'm saying he should have. You didn't have to to prove your case. I'm saying he should have called a witness to corroborate that claim that appellant made and that he argued. But I don't have that expert witness declaration. Okay. Thank you, sir. Thank you. Thank you both for your arguments here today. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar, which is Katz v. Taylor. Counsel will come forward.
judges: Ferguson, Siler, Hawkins